BRYAN SCHWARTZ LAW
Bryan J. Schwartz (SBN 209903)
Rachel Terp (SBN 290666)
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301
Emails: bryan@bryanschwartzlaw.com;
rachel@bryanschwartzlaw.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUNHONG YIM, JAIME OLARTE, and JOSE ACUNA individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  -against-<br><br><br>CAREY LIMOUSINE NY, INC. and CAREY INTERNATIONAL, INC.<br><br>     Defendants. | Case No.: 14-cv-05883<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL INTERESTED PARTIES:

  **PLEASE TAKE NOTICE** that Plaintiffs request a hearing for their Unopposed Motion

for Preliminary Approval of Class Action Settlement in the Courtroom of the Honorable William

F. Kuntz, II, located at 225 Cadman Plaza East, Brooklyn, NY 11201. At the hearing,

representative Plaintiffs Jaime Olarte and Jose Acuna,[1] through their attorneys and on behalf of all

other Drivers similarly situated, will and hereby do move the Court to: preliminarily approve the

Settlement between the Drivers and Defendants; certify, for settlement purposes only, the class of

Drivers described herein; name Bryan Schwartz Law as Class Counsel and Jaime Olarte and Jose

Acuna as Class Representatives for the Plaintiffs; authorize the mailing of notice to the Class; and

schedule a final approval hearing date.

The Motion is based upon the Unopposed Motion for Preliminary Approval of Class Action

Settlement and Memorandum of Points and Authorities in Support Thereof; the Declaration of

Bryan J. Schwartz, Esq. in support of the motion, and the exhibits thereto, including the Settlement

and the Proposed Notices to the Classes; all other exhibits and attachments submitted in support

of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the

above-captioned matter; and such additional matters as the Court may consider. A Proposed Order

is submitted herewith.

Dated: August 24, 2015                    BRYAN SCHWARTZ LAW


                                          By:  /s/ *Bryan J. Schwartz*
                                          Bryan J. Schwartz (SBN 209903)

                                          *Attorney for Individual and Representative*
                                          *Plaintiffs and the Putative Class*

_____

[1] Sunhong Yim has not signed the settlement agreement.

ii
NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; 14-cv-05883

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     PROCEDURAL HISTORY ...................................................................................... 3

III.    THE PROPOSED SETTLEMENT TERMS, AND FACTORS IN THE DECSION TO
SETTLE ................................................................................................................................. 4

    A.    The Proposed Settlement Terms are Appropriate. .............................................. 4
        1. The Settlement Provides Prompt, Meaningful Relief to the Class and Creates Institutional
        Reform. ................................................................................................................................. 4
        2. The Settlement Process Provides Fair Notice and the Scope of the Release Is Appropriate. 9
    B.    Factors in the Parties' Decision to Settle ........................................................... 10
        1. The Uncertainty of a Trial Outcome, Likelihood of Appeal, and Delay in Payment Absent
        a Settlement Favor This Resolution. .................................................................................. 10
        2. Concerns About Arbitration Agreements and the Ability of the Drivers to Proceed as a
        Class Also Favor This Settlement. ...................................................................................... 13

IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
SETTLEMENT ..................................................................................................................... 14

    A. Class Action Settlements Are Encouraged. ........................................................... 14
    B. Plaintiffs Contend that the Settlement Satisfies the FRCP 23 Requirements. ...... 15
        1. The Class Is Sufficiently Numerous. ............................................................................. 15
        2. The Plaintiffs Claims Are Typical of the Class Members' Claims. ................................ 15
        3. Plaintiffs Are Adequate Representatives of the Class .................................................... 16
        4. Common Questions of Law and Fact Predominate. ....................................................... 17
        5. Class Resolution Is Superior to Other Available Methods for the Fair and Efficient
        Adjudication of the Controversy. ....................................................................................... 18
    C.    The Settlement is Fair, Adequate and Reasonable. ............................................ 18
        1. The Settlement Is Non-Collusive and Was the Product of Extensive Negotiations. ......... 19
        2. The Court Should Weigh the Strength of Plaintiffs' Case Against the Risk, Expense,
        Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class
        Action Status Through Trial. ............................................................................................. 19
        3. The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval... 19
        4. The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor
        of Preliminary Approval. ................................................................................................... 21
        5. All Additional Settlement Terms Are Fair. .................................................................... 21

V.      CONCLUSION ....................................................................................................... 25

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; 14-cv-05883

## TABLE OF AUTHORITIES

**Federal Authorities**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 618 (1997). ..................................................... 24

*American Express Co. v Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) .......................... 13

*Anwar, et al. v. Executive Transportation Group, Inc., et al.,*
(S.D.N.Y. Nov. 17, 2014) ................................................................................. 2, 21, 23

*Arena v. Plandome Taxi Inc.* 2014 WL 1427907 (E.D.N.Y. Apr. 14, 2014) .......................... 11

*AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011) .................................................... 13

*Bano v. Union Carbide Corp.*, 273 F.3d 120 (2d Cir.2001) .................................................... 15

*Barfield v. N.Y.C. Health & Hospitals Corp.*, 537 F.3d 132 (2d Cir. 2008) ........................... 11

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ............................... 21, 22, 23, 24

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ..................................................................... 23

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988) ................................................... 11

*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) .................................................. 23

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ......................... 24

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995).......................... 15

*Custom Led, LLC v. eBay, Inc.*, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) ..................... 18

*Fogarazzo v. Lehman Bros., Inc.,* 232 F.R.D. 176 (S.D.N.Y. 2005) ....................................... 15

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989)....................................................... 15

*Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311 (2001) ................................................ 12

*In re Initial Public Offering Securities Litigation*, 243 F.R.D. 79
(S.D.N.Y. 2007) .................................................................................................. 15, 16, 19

*In re Michael Milken Associates Securities Litigation*, 150 F.R.D. 46
(S.D.N.Y. 1993) .................................................................................................... 14,15

*Joel A. v. Giuliani,* 218 F.3d 132 (2d Cir. 2000) .................................................................... 18

*Jordan v. Los Angeles County,* 669 F.2d 1311 (9th Cir.),

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; 14-cv-05883

*vacated on other grounds,* 459 U.S. 810 (1982) .......................................... 15

*Laguna v. Coverall North America, Inc.* 753 F.3d 918 (9th Cir. June 3, 2014) ........................ 23

*Langley v. Coughlin*, 715 F. Supp. 522 (S.D.N.Y. 1989) ........................................... 15

*Lizondro-Garcia v. Kefi LLC*, 2014 WL 4996248 (S.D.N.Y. Oct. 7, 2014) ...................... 21, 22

*Malachman v. Davis,* 706 F.2d 426 (2d Cir. 1983) ................................................. 19

*Marisol A. v. Giuliani,* 929 F. Supp. 662 (S.D.N.Y. 1996),
    *aff'd* 126 F.3d 372 (2d Cir. 1997) ............................................................... 16

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........................... 20

*N.L.R.B. v. Fugazy Continental Corp.*, 603 F.2d 214 (2d Cir. 1979) ............................... 12

*Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013) ....................................... 13

*Parker v. Jekyll and Hyde Entertainment Holdings, LLC*, 2010 WL 532960
    (S.D.N.Y. Feb. 9, 2010) ......................................................................... 22

*Phillips Petroleum Corp. v. Shutts,* 472 U.S. 797 (1985) ......................................... 14

*Reyes v. Altamarea Group, LLC*, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .................... 21

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y.1997) ....................................... 21

*Rutti v. Lojack Corp.*, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ............................... 14

*Saleem v. Corporate Transportation Group, Ltd.,* 52 F.Supp.3d 526
    (S.D.N.Y 2014) ............................................................ 2, 10, 12, 13, 14, 21

*Satchell v. Federal Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007) ................... 19

*Stolt-Nielsen S.A. v. Animal Feeds International Corp.*, 559 U.S. 662 (2010) ...................... 13

*Torres v. Toback, Bernstein & Reiss LLP*, 2014 WL 1330957 (E.D.N.Y. Mar. 31, 2014) ....... 21

*Toure v. Amerigroup Corp.*, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ......................... 21

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ........................................... 14

*White v. National Football League*, 41 F.3d 402 (8th Cir. 1994) ................................... 24

## State Authorities

*Jarzabek v. Carey Limousine,* 292 A.D.2d 668 (3rd Dep't 2002) ................................. 12

**Statutes and Regulations**

29 U.S.C. § 200, *et seq.*, "Fair Labor Standards Act" .................................................... 1

29 U.S.C. § 206 ............................................................................................................... 1

29 U.S.C. § 207 ............................................................................................................... 1

12 New York Codes, Rules, and Regulations § 142-2.1 *et seq.*............................... 1, 17

Federal Rule of Civil Procedure 23(c)(2)(B) ............................................................ 25

New York State Labor Law § 191 .................................................................................. 1

New York State Labor Law § 193 ............................................................................ 1, 17

New York State Labor Law § 195 ............................................................................ 1, 17

New York State Labor Law § 198-b ......................................................................... 1, 18

New York State Labor Law § 652 ............................................................................ 1, 17

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; 14-cv-05883

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is a wage and hour class and collective action brought under New York and federal law by limousine drivers against the Defendants[2] ("Carey NY"). Plaintiffs contend that Carey NY misclassified the Class Members ("Drivers") as independent contractors (called Independent Operators, or "IOs"), instead of paying them as non-exempt employees. They allege the following claims on behalf of the Class Members: (1) failure to pay minimum wage under federal law (29 U.S.C. § 206); failure to pay minimum wage under state law (NYSLL § 652 and 12 NYCRR§ 142-2.1.); failure to pay overtime under federal law (29 U.S.C. § 207); failure to pay overtime under state law (NYSLL § 652 and 12 NYCRR § 142-2.2); failure to pay spread of hours pay (NYSLL § 652 and 12 NYCRR § 142-2.4); unlawful deductions (NYSLL § 193); failure to pay wages when due (NYSLL § 191); failure to comply with notice and recordkeeping requirements and provide accurate wage statements (NYSLL § 195); violation of prohibition on kickbacks (NYSLL § 198-b); breach of contract premised on the alleged failure to pay Drivers an agreed upon percentage of fees paid by customers; breach of contract premised on the alleged requirement that Drivers participate in an insurance policy from a single underwriter; and unjust enrichment. Defendants deny each and every one of the Drivers' allegations and assert that they properly classified all Drivers as independent contractors.

In this unopposed Motion, Plaintiffs seek preliminary approval of a class action settlement of all claims. *See* Joint Stipulation and Settlement Agreement ("the Settlement"), attached hereto as Exhibit 1 to the Declaration of Bryan Schwartz, Esq. ("Schwartz Decl."). The Parties arrived at the Settlement after engaging in mediation lasting over 12 hours with Mark Rudy, one of the nation's top

---

[2] Carey NY asserts that Carey International, Inc. is an improperly named party.

1

wage/hour class action mediators. The parties conducted months of arm's-length bilateral negotiations, exchanging hundreds of emails and calls and dozens of revisions, in addition to the long mediation session.

The Settlement provides for a maximum payment of $2,100,000, and minimum payment of $1,895,000, assuming that there are no opt outs. Further, the Settlement allows Drivers with long-term contracts to execute new contracts with Carey NY to ensure that all Drivers enjoy the full rights of independent contractors, *e.g.,* to work the hours they choose without penalty, to accept or decline assignments as they see fit, to sell their business and hire subordinates, to have their contracts terminated only for cause, and more. The new contracts substantially increase the transparency of any fees charged to Drivers as part of their relationship with Carey NY. This contract is expected to have significant financial benefit for those Drivers going forward. If the Settlement is approved, and assuming no opt-outs, approximately 259 Drivers will be paid an average gross settlement share of approximately $8,108 ($2.1 million divided by 259), or $5,467 average net. Drivers with the strongest claims—without releases or arbitration agreements, operating under the long term or no term contracts—after all fees, costs, and other deductions, will receive in hand payments of nearly $20,000.

Plaintiffs have achieved this significant relief despite an extremely challenging climate for their claims. In *Saleem v. Corporate Transportation Group, Ltd.,* 52 F.Supp.3d 526 (S.D.N.Y 2014), the Court granted summary judgment for the company, ruling that limousine drivers arguably comparable to the Drivers in this case were independent contractors, not employees entitled to overtime. After the *Saleem* decision, limousine drivers bringing a similar action on behalf of a similar-sized group of drivers to this case (236) settled for $360,000—approximately $1,525 per driver, gross (and approximately $850/driver net)—a small fraction of the average recovery here. *See* Schwartz Decl., Exh. 2, Final Approval Order in *Anwar, et al. v. Exec. Transp. Grp., Inc., et al.,* 13-cv-2666 GHW, Dkt. # 134 (S.D.N.Y. Nov. 17, 2014) (attached for the convenience of the Court). *See also id.* Exh. 3, Final Approval Motion in *Anwar*, 13-cv-2666 GHW, Dkt. # 132 (S.D.N.Y. Nov. 11, 2014).

2

As such, this Settlement readily satisfies the standard for preliminary approval, fairly and appropriately resolving the claims of the Class in a manner that provides very substantial financial relief, and provides for reformation and/or modifications to Carey NY's agreements to ensure that the Drivers are treated as independent contractors. The final fairness hearing will provide the Court with another opportunity to review the Settlement, with the benefit of class members' responses and insight on the rates of participation compared with objections. Accordingly, the Parties respectfully request that the Court: (1) grant preliminary approval of the Settlement and authorize the Parties to give the Settlement Class notice of the proposed Settlement in the form of the proposed Notices submitted herewith; (2) approve Plaintiffs Jaime Olarte and Jose Acuna and undersigned counsel, Bryan Schwartz Law, as class representatives; and (3) preliminarily approve the requested enhancement payments to Plaintiffs Jaime Olarte and Jose Acuna; and (4) schedule a final approval hearing date.

## II.    PROCEDURAL HISTORY

On October 7, 2014 Plaintiff Sunhong Yim filed this collective and class action complaint alleging various New York and federal statutory wage violations. Dkt. # 1. Plaintiffs filed an Amended Complaint ("AC") on March 27, 2015 to add Jaime Olarte and Jose Acuna as named Plaintiffs, and to include claims for unjust enrichment and further claims for breach of contract. AC, Dkt. # 29.

The AC defines the Collective Class as: "All persons who worked as drivers for Carey N.Y. during the period commencing three years prior to the filing of this action through the entry of final judgment in this action." *See* AC ¶ 48. The AC defines the New York Class similarly, but with a six year statute of limitations. *See id.* ¶ 54.

Plaintiffs initiated discovery on January 2, 2015, serving interrogatories and requests for production of documents, as well as noticing a deposition of Carey NY under Federal Rules of Civil Procedure ("FRCP"), Rule 30(b)(6). On March 10, 2015, Plaintiffs deposed the CEO of Carey NY as the FRCP 30(b)(6) deponent on fourteen topics. Thereafter, Defendants provided hundreds of pages of informal discovery in advance of mediation as well as data in excel format, so that Plaintiffs would

3

have all versions of Drivers' contracts and all wage and payroll data regarding class members, to evaluate damage calculations and make an informed settlement demand. Schwartz Decl. ¶ 11.

On March 20, 2015 Mark Rudy mediated the case for over 12 hours. *Id.* ¶ 3. Mr. Rudy is a veteran wage/hour class action mediator. *Id*. Exh. 4, Rudy CV. In advance of the mediation the parties exchanged detailed mediation briefs and hundreds of pages of exhibits. *Id.* ¶ 3. The mediation did not immediately result in a Memorandum of Understanding ("MOU") but the parties continued negotiating, through hundreds of communications and dozens of revisions of draft agreements, until June 26, 2015, when they finally signed an MOU. *Id.* ¶ 3.

In the meantime, while the parties were still negotiating, on April 10, 2015 Carey NY filed its Answer to the AC denying all liability with respect to Plaintiffs' claims, asserting that its Drivers were properly classified and treated as independent contractors, and raising defenses. *See* Dkt. # 33.

On June 29, 2015, the parties (as part of a letter requesting that the Court adjourn a scheduled conference) sent notice to the Court that they had signed an MOU, agreed to material terms, and anticipated presenting a settlement agreement to this Court soon. Dkt. #39. In August 2015, after approximately 45 days of additional negotiations, the Parties finalized the instant Settlement. *See* Schwartz Decl. ¶ 3; *id.* Exh. 1.

## III.   THE PROPOSED SETTLEMENT TERMS, AND FACTORS IN THE DECSION TO SETTLE

### A.  The Proposed Settlement Terms are Appropriate.

#### 1.  The Settlement Provides Prompt, Meaningful Relief to the Class and Creates Institutional Reform.

##### a)  The Settlement provides significant compensation.

The proposed settlement calls for a payment of up to $2,100,000, if Class Members sign new IO agreements containing their expanded independent contractor rights. *See* Schwartz Decl., Exh. 1 at

4

§§ 1.19, 2.2.1, 2.3. Even if no one chose to sign a new IO agreement, and if there are no affirmative opt outs,[3] Carey NY will pay at minimum of $1,895,000. *Id.* at § 2.3.5. The Settlement calls for:

- The payment of up to $630,000, or thirty percent, of the maximum Settlement as attorney's fees. *Id.* at § 2.12.1.
- Reimbursement of Plaintiffs' actual litigation costs, not to exceed $20,000. *Id.*
- An enhancement payment to Mr. Olarte and Mr. Acuna of $10,000 each, totaling $20,000 in enhancement payments. *Id.* at § 1.13.[4]
- A payment to the designated claims administrator, Rust Consulting, of no more than $13,920. *Id.* at § 1.3.

The remaining amount—$1,416,080 (Net Settlement Amount)—will provide on average $5,467 net[5] to each of the approximately 259 class members, if they remain in the case. Schwartz Decl. ¶ 4. This includes a $50,000 reserve fund which can be used to address any Driver disputes and which will be allocated to Class Members in a second allocation if it is unneeded for this purpose. *Id.* Exh. 1 at § 1.31.

> **b) The Settlement provides additional safeguards to assure independence to Drivers, in the contracts which govern their working relationships with Carey NY.**

Carey NY has agreed to offer new contracts to their longest term Drivers (Subclass C - 33 Class Members, and Subclass B – 98 Class Members) to encompass numerous independent contractor rights, and to memorializing additional safeguards for Drivers with existing, older contract versions. *See* Schwartz Decl., Exh. 1 at §§ 2.3; 2.6; *id.* Exh, 1, Settlement Exhibit D, Subclass C New IO Agreement; *id.* Exh. 1, Settlement Exhibit C, Subclass B Reformation. Class Members with three-year

---

[3] Carey NY will keep the settlement allocation intended for any class member who affirmatively opts out of the settlement. Schwartz Decl., Exh. 1, at § 2.3.6.

[4] The Agreement contemplated enhancements for all participating Plaintiffs and Mr. Yim elected not to participate. Schwartz Decl., Exh. 1, at § 1.13

[5] The Settlement anticipates no payroll tax deductions, because Carey NY believes it has always had a lawful independent contractor (1099) model—however, if payroll deductions are required by a taxing authority, Carey NY will bear the employer's share of such taxes *apart from* the Settlement fund. Schwartz Decl., Exh. 1, at §§ 2.4.4, 2.15.2.

contracts that already included expanded independent contractor rights and contained individual arbitration agreements (Subclass A - 128 Class Members)—many of whom already signed releases of claims against Carey NY—will nonetheless receive cash payments of $2,000/each, unless they opt out of the settlement. Schwartz Decl., Exh. 1 at §§ 1.38, 2.3.2.

The reformed contracts will incorporate Carey NY's "IO Bill of Rights" and include the following rights and benefits to the class members: (1) IOs have a non-exclusive relationship with Carey NY; (2) IOs may unilaterally choose whether to purchase, lease, or otherwise obtain their vehicles; (3) IOs have the right to provide their own chauffeurs; (4) IOs have the right to set their own schedules; (5) IOs have the right to accept or reject offered jobs without penalty (other than the loss of income from the declined work); (6) IOs have the right to choose their method of operation; (7) IOs pay their own tax and labor costs; (8) IOs pay all the expense associated with their business; (9) IOs have the right to operate without supervision by Carey; and (10) Carey NY can only terminate IO Agreements pursuant to the terms of the IO Agreement and the law. *Id.* Exh. 1 at § 2.6.

Subclass C Drivers—who all have worked with Carey NY for over a decade—will have the opportunity to sign substantially improved 10-year term contracts containing the above rights and additional improved provisions that include: greater transparency relating to discounts, charges, or fees affecting Driver compensation; termination of the agreement for good cause shown; and increased freedom to sell and assign their interests under the contract at a price of their choosing. *See Id.* Exh. 1, Settlement Exhibit D, at pp. §§ I.F, V, VII, VIII. This contract is expected to have significant financial benefits for those Drivers going forward.

Each of these modifications will further protect the Drivers and support their independent contractor status as compared with Carey NY's old contracts with their longest-term Drivers (some had perpetual term agreements (*see id.* Exh. 5 at § VI, Old Carey NY No-Term Contract), which provided they had to be available at all times for Carey NY work (*id.* Exh. 5 at §§ I.A.5, I.B.3), could not turn down work without being penalized, were obligated to participate in any purchase agreement

6

between Carey NY and any car manufacturer (*id.* Exh. 5 at § I.B.2), were obligated to reach an agreement with Carey NY regarding the identity of their insurance underwriter (*id.* Exh. 5 at § I.D.1), could not operate more than one car absent Carey NY's approval (*id.* Exh. 5 at § I.B.2), could not employ other drivers without Carey NY's written authorization (*id.* Exh. 5 at § IV), could not affiliate with any other driving company without Carey NY's prior written consent, or engage in a business that in any way competed with Carey NY (*id.* Exh. 5 at §§ I.A.3, I.E.1), could not transfer their contracts for more money than the amount for which they were purchased (*id.* Exh. 5 at § V.1), could be terminated at any time for any reason (*id.* Exh. 5 at § VIII), among other terms that the Drivers contend restricted them. Schwartz Decl., Exh. 5.

The new contracts offered to the members of Subclasses B and C are much more protective of the Drivers' rights than the prior contracts that they held with Carey NY, and these reforms are very valuable to Class Members every day. *See id.* ¶ 12.

### c) The payment structure equitably distributes the common fund based on the strengths and weaknesses of each group of Drivers' claims.

The Settlement proposes to distribute funds fairly. The Class Members will be classified in one of three subclasses: Drivers with three-year contracts with Carey NY (Subclass A), Drivers with five-year contracts or inactive long-term (or inactive "no-term") contracts (Subclass B), and Drivers with active long-term or active "no-term" contracts (Subclass C). Schwartz Decl., Exh. 1 at §§ 1.38-1.40. As noted above, Drivers in Subclass A will be allocated a payment of $2,000. *Id.* at § 2.3.2. Drivers in Subclass B will be allocated a payment of $4,500—they will receive $2,000 if they do not opt out, and $2,500 more if they exercise their opportunity to sign the new IO contract. *Id.* at §§ 2.3.3-2.3.4. Drivers in Subclass C will receive approximately $19,972 each—$5,000 if they do not opt out, and the rest if they sign the new contract. *Id.* at § 2.3.5.

This allocation reflects an equitable distribution of the fund in accordance with the contracts the Plaintiffs have with Carey NY, and the strength of those Drivers' claims against Carey NY, as evaluated by Plaintiffs' counsel. Schwartz Decl. ¶ 7. The Drivers in Subclass A already have contracts

7

which, on paper, assured them of many of the rights of independent contractors. *Id.* They had signed individual arbitration agreements (*i.e.,* with class waivers), and most already signed releases of claims against Carey NY—making their claims much weaker than those of Subclasses B or C. *Id.*

Those drivers in Subclass B may have contracts that may contain arbitration class waivers. *Id.* Members of Subclass B who have standard five-year term agreements are subject to terms that are far less restrictive than those of Drivers in Subclass C, such as: freedom to set their own work schedules (Schwartz Decl., Exh. 6, Old Carey NY Five-Year Term Contract, at § I.A.2); freedom to decline particular jobs (*id.*); freedom to perform driving service to non-Carey individuals or companies (*id.* at § I.A.7); freedom to purchase their cars through any seller (*id.* at §§ I.B.1, I.B.4); freedom to assign interests in their contact at a price of their choosing (*id.* at V).

The Drivers in Subclass C had no arbitration agreements, had contracts that Plaintiffs would argue are much more restrictive (and, Plaintiffs would argue, more akin to employment contracts, as detailed above), and must therefore receive proportionally more compensation for their stronger claims. *See id.*

### d) The small potential reversion is appropriate under the circumstances.[6]

This is an unusual settlement because, in addition to cash compensation, it will result in an implementation of major contract reforms for the Subclass B and C Drivers—if the Drivers agree to sign new contracts. Carey NY wants to ensure that all of its Drivers have compliant IO agreements that fully support what Carey NY believes is the lawful classification of the drivers as independent contractors. To encourage all of the Drivers to sign the new agreements, which are designed to memorialize a legitimate independent contractor model—one which Carey NY believes has always

---

[6] Adding the totals of all minimum allocations and the reserve fund and deductions for fees, etc., described above, there will be a remainder of $61,423 in the settlement fund (with $50,000 explicitly in a reserve fund), which will be allocated pro rata to participating Class Members, according to the Settlement's terms, along with other amounts unclaimed—*e.g.,* if some Drivers do not sign new agreements. Schwartz Decl. ¶ 9; *id.* Exh. 1 at §§ 1.3, 1.9, 1.13, 1.19, 1.38-1.40, 2.3.2, 2.3.3, 2.3.5, 2.12.1.

8

been in existence, but which Plaintiffs dispute—Carey NY will pay additional compensation to Drivers in Subclasses B and C who sign them. *See* Schwartz Decl. ¶ 7; *id.* Exh. 1 at § 2.3.

In the event that a Class Member opts out, his or her total allocation will revert to and/or be retained by Carey NY. *Id.* at § 2.10.5. In the event that a Class Member in Subclass B or C elects not to sign the new IO agreement, but otherwise does not opt out of the settlement, the additional payment he would have otherwise received upon executing a new contract will be split. *Id.* at §§ 2.3.4-2.3.5. Half of that payment will revert to Carey NY, and the other half will be disbursed among the members of their subclasses who did sign new IO agreements. *Id.* This allocation ensures that the common fund is at minimum $1,895,000, assuming no opt outs. *Id.* at § 2.3.5(e).[7]

In other words, the maximum reversion to Carey NY under the Settlement (excluding any reversion for the amount of an allocation for someone who affirmatively opts-out of the settlement) is equal to $205,000. *Id.* at § 2.3.5(d). That is calculated as follows: $122,500 ($1,250 times 98 Class Members—if no Subclass B Class Member executes a new agreement) PLUS $82,500 ($2,500 times 33 Class Members—if no Subclass C Class Member executes a new agreement). *Id.*

The parties' interests are aligned only in that they want maximum participation in the Settlement, to claim the entire fund and take full advantage of the new contract rights for Drivers.

## 2. The Settlement Process Provides Fair Notice and the Scope of the Release Is Appropriate.

Class Members may elect to opt out of the Settlement Class and thus exclude themselves from the litigation, the Settlement, and the Settlement Class by the claims period deadline. *See* Schwartz Decl., Exh. 1 at § 2.7. Class Members who do not timely opt out of the Settlement Class will be members of the Settlement Class and will receive settlement payments by mail. *See id.* at § 2.7.2. The back of the check will state that by depositing the check, the payee agrees to release all relevant wage

---

[7] If more than seven percent of Drivers opt out, then Carey NY has the option of withdrawing from the settlement. Schwartz Decl., Exh.1 at § 2.14.2(a).

and hour claims at issue in this suit, including all FLSA claims (i.e., the Released FLSA and Released non-FLSA Claims). *See id.* at § 2.10.3. The Notice explains that even if Class Members do not cash the check, they will be subject to the judgment and its associated release of state law claims (but not FLSA claims) unless they affirmatively opt out of the suit. *See id.* at § 2.7.2. Class Members who do affirmatively opt out will not receive a settlement payment, but also will not be subject to any release of claims, and will be deemed never to have participated in the litigation or the Settlement. In addition, as explained in more detail in the Class Notice, Class Members who do not opt out will have an opportunity to object to the Settlement. *See id.* at § 2.8.2.

When the judgment becomes final, the Settlement Class Members who do not opt out will release all wage and hour claims that relate to the claims asserted in the lawsuit—except for the FLSA claims of any Class Members who do not deposit their Settlement payments. *See id.* at § 2.11. The Class Representatives who are seeking enhancements will further execute a general release of all claims against Defendants and the released parties. *See id.* at § 1.10.

## B. Factors in the Parties' Decision to Settle

Factual and legal factors the Parties considered in electing to settle include:

### 1. The Uncertainty of a Trial Outcome, Likelihood of Appeal, and Delay in Payment Absent a Settlement Favor This Resolution.

The uncertainty of a trial provides a strong incentive for both Parties to settle. Full relief on Plaintiffs' claims, including all penalties available under New York law, would result in a greater recovery for Plaintiffs; likewise, if Carey NY were able to prevail on liability at trial (or summary judgment, as in *Saleem*), Plaintiffs would recover nothing in this case.

Plaintiffs contend that Carey NY will be unable to meet their burden of establishing that the Drivers—especially those in Subclass C—were independent contractors under either federal or New York law. Specifically, Plaintiffs argue that the Drivers will be able to demonstrate they were in fact "employees" under the Second Circuit's "economic reality" test, which considers:

(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988); *see also Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) (citing *US v. Silk*, 331 U.S. 704, 716 (1947)). Carey NY, however, asserts that the Drivers and the putative class members do meet the applicable tests and were properly classified as independent contractors.

Most of the dispute between Carey NY and Plaintiffs revolves around the first factor. Plaintiffs' arguments on factors two through five can be quickly summarized. As to the second factor, Plaintiffs in Subclass C would contend that Drivers (prior to the new IO agreement that is part of this deal) do not have an investment in the business, as they cannot sell their contract for more than they paid, can only sell with Carey NY's blessing, and do not solicit business. As to the third factor, in all Subclasses, plaintiffs would argue that chauffeuring for Carey NY requires no special skill nor does their job require them to take independent initiative. *See Arena v. Plandome Taxi Inc.* 2014 WL 1427907, at *6-7 (E.D.N.Y. Apr. 14, 2014) (triable issued of fact existed whether driver was misclassified where trip arrangements are made by the employer, and the driver was not permitted independently to seek out passengers). Under the fourth factor, Plaintiffs would contend that the long term nature of the Drivers' employment with Carey NY further demonstrates that they are employees—Plaintiffs have each worked for Carey NY for 15-20 years. Plaintiffs would argue that the fifth factor is satisfied as to all Subclasses: Carey's entire business is based on the Drivers' work. Schwartz Decl. ¶ 5(a).

Returning to the first factor, the factor in most dispute, Plaintiffs argue that Carey NY exerts extensive control over the Drivers because Carey NY: dispatches jobs; determines fares based on a percentage of fares earned by drivers; enforces rules concerning the appearance of the car and the clothing worn by drivers; strictly enforces a non-compete clause relating to Carey NY's customers; as to Subclass C, before the new IO agreement, would penalize drivers from turning down jobs, and

11

would require Drivers to be available around the clock. *Id. See N.L.R.B. v. Fugazy Cont'l Corp.*, 603 F.2d 214 (2d Cir. 1979); *Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 325 (2001) (chauffeur for company's executives was employee for FLSA purposes).

On the other hand, Carey NY can be expected to argue that the Drivers can appropriately be classified as independent contractors as the Drivers exercised complete control over the manner and means of directing their own business. Among various other arguments, Carey NY will likely contend specifically that: Drivers could, and regularly did, turn down jobs without penalties for a multitude of reasons; Drivers invested in their own vehicles and were responsible for paying their business expenses; the base fee that Drivers pay is an investment that allows them to avail themselves of a future income stream through referrals; Drivers regularly accepted business from their own customers without any involvement by Carey NY, regardless of any language in the contracts; Drivers hired other chauffeurs to drive their vehicles; and Drivers were able to sell or transfer their interests. Schwartz Decl. ¶ 5(a).

Carey NY can be expected to cite *Jarzabek v. Carey Limousine*, as evidence that the Drivers are not misclassified. There the NY Appellate Division, Third Department upheld the Unemployment Insurance Appeal Board's determination that Jarzabek was an independent contractor with Carey NY and thus not entitled to any employment benefits. 292 A.D.2d 668 (3rd Dep't 2002).

Of course, Carey NY will point to *Saleem,* 52 F.Supp.3d 526 (S.D.N.Y 2014). In *Saleem,* the district court determined that limo drivers were independent contractors rather than employees, regardless of whether driving was "integral" to the Defendant's business in that case. *Id.* at 543-544. The Plaintiffs argue this case is distinguishable and that there are meaningful differences in the manner that drivers obtained jobs in *Saleem* and the manner Carey NY Drivers were assigned work. But *Saleem* is unfavorable precedent for Plaintiffs.

Because *Saleem*'s Second Circuit appeal is still pending (2nd Cir. Case No. 15-88, filed Jan. 7, 2015), there is not yet a binding precedent to resolve definitively whether the Drivers are properly classified as independent contractors, creating uncertainty for both sides, and supporting compromise.

Regardless of which side prevailed, trial would result in a significant expenditure of resources by both sides. Trial would not be complete until, at the earliest, later in 2016, and would almost certainly be followed by an appeal (*Saleem* was filed in 2012 and the appeal is just underway and almost certainly will not be resolved until at least 2016). Even if Plaintiffs prevailed at trial and on appeal, the Class would not recover for years, whereas under the Settlement, the Class will receive substantial payments and major contract reforms soon, just over a year after the lawsuit was filed.

### 2. Concerns About Arbitration Agreements and the Ability of the Drivers to Proceed as a Class Also Favor This Settlement.

If this case were to proceed, Carey NY would also likely attempt to compel arbitration as to more than 200 of the Drivers who signed contracts containing arbitration provisions. Schwartz Decl. ¶ 5(b). Further, 171 of those Drivers signed a contract which includes a "Class Action, Collective Action, and Representative Action Waiver" which may bar those Drivers from participating in this case, either in Court or in class arbitration. *Id.* Carey NY would argue that similar arbitration class waivers have been upheld by the Supreme Court. *See AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011); *Am. Express Co. v Italian Colors Rest.*, 133 S. Ct. 2304 (2013). Further, even for those Drivers with contracts silent on the issue of class arbitration, it is anticipated that Carey NY would contest those Drivers' ability to proceed on a class-wide basis, citing *Stolt-Nielsen S.A. v. Animal Feeds International Corp.*, 559 U.S. 662, 685 (2010) and *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013). *Id.* at 2066 ("Class arbitration is a matter of consent: an arbitrator may employ class procedures only if the parties have authorized them"). Settling now would eliminate the risk that Carey NY could succeed in eliminating the vast majority of Drivers from recovering as part of the Class, based upon these arbitration agreements. If forced to arbitrate individually, it is a near certainty that

13

few Drivers would pursue their claims against Carey NY, and would recover nothing. Schwartz Decl. ¶ 5(b). *See generally Rutti v. Lojack Corp.*, 2012 WL 3151077, at *5 (C.D. Cal. July 31, 2012) ("It is well-established that there are strong disincentives for employees to participate in a class action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA."); *Phillips Petroleum Corp. v. Shutts,* 472 U.S. 797, 812–13, 105 S.Ct. 2965 (1985) (rejecting a constitutional requirement for opt-in process in part because "[r]equiring a plaintiff to affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit").

Moreover, all misclassification cases carry the risk of denied certification or decertification. Carey NY would argue regarding individualized issues to defeat certification, as in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). Here, Carey NY would likely point to the differences in contracts between Drivers, the differences in the amount of time Drivers spent working and how often they turned down jobs, the different routes Drivers worked, and the fact that some Drivers had subcontractors working for them, as some of the factors that created individualized issues. Schwartz Decl. ¶ 5(c). *See also Saleem v. Corporate Transp. Grp., Ltd.*, 2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013) (denying class cert. in limo driver case). If Plaintiffs were to lose class and collective action certification, again, most of those eligible to recover under this settlement would be left without compensation. Schwartz Decl. ¶ 5(c).

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

### A. Class Action Settlements Are Encouraged.

Federal law strongly encourages settlements in the context of class actions. *See, e.g.*, *In re Michael Milken Associates Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in

class actions."); *see also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 83 (S.D.N.Y. 2007)  ("it is axiomatic that the law encourages settlement of disputes") (quoting *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129 (2d Cir.2001); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (the "overriding public interest in settling and quieting litigation" is "particularly true in class action suits.") (quotations omitted). Both sides believe that their best interests are served by the Settlement, rather than continuing to litigate the Drivers' claims.

### B.  Plaintiffs Contend that the Settlement Satisfies the FRCP 23 Requirements.

Plaintiffs contend that preliminary approval of the proposed settlement is justified because, for settlement purposes, the settlement meets the requirements of a "class action" pursuant to FRCP 23 and Second Circuit jurisprudence. Specifically, the Class is numerous, Plaintiffs are typical of the class members, Plaintiffs are adequate representatives of the class, there are common questions of law and fact that predominate, and a class action is the superior means of resolution of claims here.

### 1. The Class Is Sufficiently Numerous.

The Proposed Class is so numerous that joinder of all members is impracticable. Generally, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  There are approximately 259 individuals covered by the class definition and the subclasses are sufficiently numerous to warrant class treatment. Schwartz Decl., Exh. 1 at 1.6. *See, e.g., Langley v. Coughlin*, 715 F. Supp. 522, 553 (S.D.N.Y. 1989) (subclasses between 30 and 50 adequate to meet the numerosity requirement); *Jordan v. Los Angeles Cnty.,* 669 F.2d 1311, 1319 (9th Cir.) *vacated on other grounds*, 459 U.S. 810 (1982) (in considering the certification of three proposed subclasses, the court noted that it "would be inclined to find the numerosity requirement in the present case satisfied *solely* on the basis of the number of ascertained class members, i.e., 39, 64, and 71").

### 2. The Plaintiffs Claims Are Typical of the Class Members' Claims.

The requirements of typicality are "not demanding." *Fogarazzo v. Lehman Bros., Inc.,* 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (citing *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.

15

1993)). "The rule is satisfied, therefore, if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. v. Giuliani,* 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd,* 126 F.3d 372 (2d Cir. 1997).

Plaintiffs' claims along with the claims of other class members arose from Carey NY's alleged misclassification of Drivers as independent contractors. AC, at ¶ 57. Plaintiffs' duties were typical of the Class, and Plaintiffs were subject to the same common policies and practices by which Carey NY controlled the conduct of other Class Members. *Id.* Plaintiffs also contend, that like other Class Members, Carey NY paid Plaintiffs lower amounts than they were promised under their contracts with Carey NY. *Id.* Therefore, the requirement of typicality is met.

### 3.  Plaintiffs Are Adequate Representatives of the Class

Courts in this Circuit have determined that "representation is adequate if: (1) there is no conflict of interest between the plaintiffs and the other class members; and (2) plaintiffs' attorneys are qualified, experienced and capable." *See In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 85 (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000).

Plaintiffs Acuna and Olarte, who signed this Settlement, are members of the Class, and do not have any conflicts of interest with the Class. They have fairly and adequately protected the interests of the Class, providing extensive information to assist in discovery, attending and providing information at and before mediation, assisting in the lengthy negotiations of the Settlement and in formulating the most advantageous terms for the new IO agreements. Schwartz Decl. ¶ 15.

Counsel has actively identified, investigated and prosecuted the claims that are the subject of this Settlement and has worked vigorously to obtain the most advantageous terms. Schwartz Decl. ¶ 14. Counsel has extensive experience in class action and in particular, in wage/hour misclassification litigation, having been appointed Class Counsel in numerous other similar cases. *Id.* ¶ 16. Class Counsel has demonstrated that they have the ability and resources to vigorously pursue the claims asserted in this litigation. Schwartz Decl. ¶ 16.

16

Plaintiffs' Counsel and the Plaintiffs Olarte and Acuna meet the adequacy requirement.[8]

### 4. Common Questions of Law and Fact Predominate.

Plaintiffs allege that there are questions of law and fact common to Plaintiffs and the Class Members that predominate over any question affecting only individual members of the class. These common questions of law and fact include, without limitation:

a) Whether the Class Members have served Carey NY as employees rather than independent contractors under New York law;

b) Whether the Class Members have necessarily incurred employment-related expenses and losses in carrying out their duties for Carey NY, and whether Carey NY has knowingly and intentionally failed to indemnify the Class Members for those expenses and losses in violation of NYSLL § 193;

c) Whether Carey NY has knowingly and intentionally made improper deductions from the compensation paid to the Class Members in violation of NYSLL § 193;

d) Whether Carey NY has required, encouraged, or permitted the Class Members to work in excess of 40 hours per week;

e) Whether Carey knew or should have known that the Class Members regularly worked over 40 hours per week;

f) Whether Carey NY has knowingly and intentionally failed to pay the Class Members minimum wage for all hours worked in violation of NYSLL § 652;

g) Whether Carey NY has failed to pay the Class Members overtime wages for time worked in excess of 40 hours per week in violation of NYSLL § 652 and 12 NYCRR § 142-2.2;

h) Whether Carey NY has knowingly and intentionally failed to pay the Class Members spread of hours pay in violation of NYSLL § 652 and 12 NYCRR § 142-2.4;

i) Whether Carey NY has knowingly and intentionally failed to provide the Class Members with an annual notice for employees containing information regarding conditions and terms of employment, as required by NYSLL § 195;

j) Whether Carey NY has knowingly and intentionally failed to provide the Class Members with itemized statements showing total hours worked with each payment of wages, as required by NYSLL § 195;

---

[8] The undersigned takes no position on Plaintiff Yim in this Motion.

k)  Whether Carey NY has knowingly and intentionally breached their contracts with Class Members by paying them less than the agreed percentage of the fees received from customers;

l)  Whether Carey NY has knowingly and intentionally breached their contracts with Class Members by requiring them to purchase insurance from a single insurance underwriter;

m) Whether Carey NY was unjustly enriched at the Drivers' expense by overcharging the Drivers for the insurance policy;

n)  Whether Carey NY and/or their agents unlawfully demanded "kickbacks" as a quid pro quo for assigning jobs to the Class Members in violation of NYSLL § 198-b; and

o)  The nature and extent of class-wide injury and the measure of damages for those injuries. *See* AC ¶ 59-74.

Plaintiffs assert that the resolution of these predominant questions as to any one Class Member would also resolve the questions as to fellow Class Members. Common questions of law and fact predominate.

**5.  Class Resolution Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy.**

Resolution of the issues in this case on a class-wide basis as a class action is superior to other methods of adjudication. The alternative to a single class action—numerous individual actions— would be inefficient and unfair because many Class Members would not recover and the transactions costs would potentially eclipse the value of the recovery. *See, e.g., Custom Led, LLC v. eBay, Inc.*, 12-CV-00350-JST, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) (superiority established because a "class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations"); *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 92 (finding superiority when "[f]or most class members the amount of money at stake will be too small relative to the cost of pursuing individually filed actions.").

**C.  The Settlement is Fair, Adequate and Reasonable.**

At this stage, the Court is charged with determining whether a settlement is "fair, adequate, and reasonable." *Joel A. v. Giuliani,* 218 F.3d 132, 138 (2d Cir. 2000). In evaluating procedural

18

fairness, the Court should look to "the negotiating process, examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *Malachman v. Davis,* 706 F.2d 426, 433 (2d Cir. 1983).

### 1. The Settlement Is Non-Collusive and Was the Product of Extensive Negotiations.

The proposed Settlement was the product of arm's-length, hard-fought, non-collusive negotiations, including a 12-hour mediation with a highly experienced class action mediator and nearly five months of additional negotiations. *See* Schwartz Decl. ¶ 3; *see also Satchell v. Fed. Exp. Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). The resolution was informed by the FRCP 30(b)(6) testimony of the company's CEO and hundreds of records—all of the relevant contracts and policies and pay and time records for the entire class. Schwartz Decl. ¶ 11.

Plaintiffs and the putative Class Members are and have been represented by experienced counsel, who have had numerous wage and hour class action settlements approved by federal and state courts and who have repeatedly been approved as Class Counsel. *Id.* ¶ 16. Counsel fought for terms most advantageous to the entire class since this case was filed. *Id.* ¶ 12. Among other advantageous terms, Counsel insisted on substantial compensation for all Drivers and major revisions to the contracts Carey NY uses with many of its Drivers. *Id.* Plaintiffs' counsel insisted on a release tailored to the nature of the claims at issue, and an equitable distribution of the Settlement Amount that appropriately compensates members of the class based on the strength of their claims. *Id.*

### 2. The Court Should Weigh the Strength of Plaintiffs' Case Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Through Trial.

As discussed in Section III.B, *supra,* Plaintiff believes the case has significant strengths, but that there are also considerable risks to further litigation and to maintaining class action status.

### 3. The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; 14-cv-05883

The Settlement will provide Class Members with significant up-front cash payments, and the Drivers in subclasses B and C will receive significant long-term benefits from the new IO contracts under the settlement. If all eligible Drivers participate in the suit, the average payment per Class Member will be nearly $5,500, after fees, costs, and the enhancements are subtracted. Schwartz Decl. ¶¶ 4, 14. For those in Subclass C, with the most valuable claims, the payment will be much greater— almost $20,000. *See id.* at Exh. 1 at § 2.3.5. To the extent that some eligible Class Members decline to deposit their checks, or choose not to sign the new IO agreements, the other class members will receive a larger payment as outlined in the Settlement. *See id.* at §§ 2.3.4-2.3.5.

The Settlement provides monetary relief that constitutes a substantial percentage of Defendant's exposure based on Plaintiffs' estimated value of the claims. The strong result warrants this Court's approval, in light of the extremely high risks of: 1) individual arbitration for most of the Drivers, which functionally would likely mean $0 recovery; 2) denied class certification, at least for most of the Drivers; and 3) defeat on the merits (at least for Subclass A and many in Subclass B), based on prior waivers and facially compliant contracts that contain independent contractor language.

District Courts in this Circuit and elsewhere have lately approved numerous settlements in wage/hour class actions providing far less relief to class members. In May 2012, the Southern District of New York granted final approval to a settlement of roughly $2.5 million for a class of 1,501 people. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012). The court found that, even if, as the objectors contended, the total exposure for the case was $125 million, the settlement could still reasonably be approved, given the litigation risks. *Id.* In other words, even if the Settlement paid just 2% of the defendant's overall exposure, the court would still have approved the settlement. *See id.* The average payment to the claimants in that case was approximately $1,100 *before* deduction for the costs of paying the claims administrator. *Id.*

In April 2013, the Southern District granted approval to a $4.9 million settlement for 1,735 employees of KeyBank who worked as "relationship managers," with a net settlement fund of

20

$3,184,053. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013). If all settlement class members participated, the result would be $1,835.18 payments. *Id.*

As noted above, in *Anwar,* the net settlement payment was $850/driver, and in *Saleem,* the drivers lost outright.

### 4. The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval.

Counsel for Plaintiffs have represented thousands of employees in wage/hour class actions like this one, and have had settlements approved repeatedly by federal district and circuit courts, including in independent contractor misclassification cases involving drivers. Schwartz Decl. ¶ 16. In the view of Plaintiffs' counsel, this settlement is an exceptional result, in terms of the monetary relief for class members, the restructuring of Carey's contracts with the drivers, and the timing—roughly a year after suit was filed. *See* Dkt. # 1. The Court should preliminarily approve the settlement.

### 5. All Additional Settlement Terms Are Fair.
#### a. The Proposed Enhancement Payments for the Named Plaintiffs Are Fair.

Enhancements are commonly awarded to representative Plaintiffs in class actions. *See, e.g.*, *Lizondro-Garcia v. Kefi LLC*, 2014 WL 4996248, at *9 (S.D.N.Y. Oct. 7, 2014). They are designed to compensate plaintiffs for (1) the personal risk they took on in becoming a litigant, (2) the time and effort the plaintiff expended in assisting in the prosecution of the litigation, and (3) any other burdens sustained by the plaintiff in lending herself or himself to the prosecution of the claim, placing the Class interests before his own. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y.1997); *accord Torres v. Toback, Bernstein & Reiss LLP*, 2014 WL 1330957, at *3 (E.D.N.Y. Mar. 31, 2014). Courts commonly give enhancements in wage and hour cases of $10,000 or higher. *See, e.g.*, *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (awards of $10,000 in wage and hour case); *Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (awards of $15,000 in wage and hour case).

Though the Court will finally decide upon the enhancements at final approval, at this stage, the Court should deem the proposed enhancements reasonable, because each of the Plaintiffs shouldered substantial risks in becoming a litigant in this action. In bringing this action each of the Plaintiffs risked his reputation within the chauffer community of New York and with Carey NY. *See Parker v. Jekyll and Hyde Entertainment Holdings, LLC*, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010) (recognizing adverse professional consequences as a justification of requested enhancement payments of up to $15,000). Each of the Plaintiffs approached counsel about the possibility of pursuing retaliation claims because he felt a large drop off in the number of jobs he was receiving, although Carey NY disputes those claims. Schwartz Decl. ¶ 15. *See Lizondro-Garcia*, 2014 WL 4996248, at * 9 (awarding enhancements in light of plaintiffs' assuming "the risks of retaliation and other consequences for their roles as class representatives").

The Plaintiffs have all expended substantial effort in assisting in the prosecution of the litigation. Plaintiffs have spent dozens of hours each on the litigation doing things such as attending mediation, working with counsel on the mediation brief, and helping counsel prepare for discovery, and conferring with counsel throughout negotiations. Schwartz Decl. ¶ 15. Plaintiffs further produced extensive records of their employment with Carey NY including records of payment from Carey NY, their contracts with Carey NY, and their insurance policies as Drivers. *Id.*

Plaintiffs Olarte and Acuna are also signing general releases, unlike the other class members who are only releasing their wage and hour claims. *Id.* These broader releases further justify a greater payment to these Plaintiffs.

Perhaps most significantly, the Plaintiffs had not previously signed either releases, or arbitration agreement with Carey NY, and had valuable claims they could have pursued independently of a class action, possibly recovering far more than they are recovering as Class Representatives, ensuring that their colleagues also recover. *See* Schwartz Decl. ¶ 15. Without the potential for

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; 14-cv-05883

meaningful compensation, Class Representatives will be deterred from undertaking such a prolonged effort and making such a sacrifice in other cases. *Id.*

For the foregoing reasons, all of which weigh heavily in favor of granting the requested enhancement to the Plaintiffs, undersigned counsel believes that $10,000 is the minimum in a case of this nature which would viably promote the public policy interest in encouraging those with wage claims to assert them despite the fears associated with doing so. *Id.*

### b.   Attorneys' Fees of Thirty Percent of the Common Fund Are Justified.

Carey NY has agreed not to oppose any requests for attorneys' fees of thirty percent of the total Settlement Amount. The U.S. Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (recognizing common fund doctrines). An award of one-third of the fund is "consistent with the norms of class litigation in this circuit." *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) (citing *Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); Schwartz Decl. Exh. 2, Final Approval Order in *Anwar* (awarding one-third in attorneys' fees, despite only $850/driver recovery). Here, Plaintiffs' counsel requests 30% of the common fund ($630,000), slightly less than the typical 33%. In the unlikely event the entire reversion occurs (*i.e.,* no Drivers sign new IO agreements, such that the common fund is only $1,895,000), Plaintiffs' attorneys fees would *still* be less than one-third of the common fund.

Aside from falling slightly below the norms of compensation in this Circuit, the payment is justified because a significant result of this Settlement is that Carey NY is changing its contracts with the Drivers. *See* Schwartz Decl. Exh. 1 at § 2.3.1. This injunctive relief component of the settlement is not accounted for in the $2,100,000 settlement, and financial benefits to current and future Drivers will accrue continually in the future. Schwartz Decl. ¶ 12. *See also Laguna v. Coverall Norther*

23

*America, Inc.* 753 F.3d 918, 922-923 (9th Cir. June 3, 2014) (factoring in value of injunctive terms of the settlement in considering percentage of settlement recovery ascribed to attorney's fees), *vacated on other grounds* (Nov. 20, 2014).

Courts consider not only the results achieved and the skill and quality of work—which Plaintiffs submit are high on all counts—but also the risk of litigation and the contingent nature of the fee and the financial burden carried by the Plaintiffs. Plaintiffs' Counsel have expended hundreds of hours litigating this matter, with a strong risk of little or no recovery. *See* Schwartz Decl. ¶ 14. With their fee petition prior to final approval, Plaintiffs' Counsel will provide the Court with a detailed breakdown of their hours worked and fees incurred for a lodestar cross-check. Plaintiffs' counsel should not be penalized by use of a straight lodestar in their fees for facilitating an early settlement of a portion of the Class. *See Beckman.*, 293 F.R.D. at 482 (stating that while the requested 6.3 lodestar multiple was near top of the range that courts commonly approved "this should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial."). Here, the undersigned estimates a lodestar closer to 3.0, and will detail the lodestar in advance of final approval. Schwartz Decl. ¶ 14.

### c.   The Notice to the Class Is Sufficient.

The proposed Class Notices and the proposed method of distribution, are appropriate. *See* FRCP 23(c)(2)(B); *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); *White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir. 1994), *abrogated on other grounds*, *Amchem Products, Inc. v. Windsor*, 521 U.S. 618, 618-20 (1997). The proposed form of notice will be sent via first-class mail to the last known mailing address and email address of each Class Member and, prior to mailing the Class Notices, an experienced Claims Administrator, Rust Consulting, will consult the United States Postal Service's National Change of Address Database (or similar customarily used search method) to review the accuracy of and, if possible, update a Class Member's

24

mailing address. *See* Schwartz Decl. Exh. 1 at §§ 1.27, 2.7.1. The Class Notices will provide the details of the case and the proposed settlement and the specific options available to Class Members, as described above. *Id.* at § 2.7. For those Class Members in subclasses B and C who are being offered the opportunity to sign new contracts with Carey NY, such agreements shall be provided to the Class Members in the mailing with the Class Notice. *Id.* The Class Notice will provide Class Members with information from which they can make an informed decision about whether to opt out, object, sign the new IO agreement, or take no further action. *Id.* Thus, the proposed Class Notices are adequate. A reminder mailing will also be sent by the Administrator to all members of Subclass B and C who have not signed and returned a new IO agreement within thirty (30) days of mailing of the Class Notices. *See id.* at § 2.7.3.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs submit that the Settlement is fair, adequate and reasonable. Plaintiffs and their counsel believe that the settlement is in the best interests of the Plaintiffs and the Class. Under the applicable class and collective action standards, Plaintiffs request that the Court grant this unopposed motion and: preliminarily approve the Settlement; certify, for settlement purposes only, the class of Drivers described herein; name Bryan Schwartz Law as Class Counsel, and Jaime Olarte and Jose Acuna as Class Representatives; name Rust Consulting as Claims Administrator; authorize the mailing of Notice to the Settlement Class; and schedule a final approval hearing date.

DATED: August 24, 2015                    BRYAN SCHWARTZ LAW

                                          By:   /s/ *Bryan J. Schwartz*
                                          Bryan J. Schwartz (SBN 209903)
                                          *Attorney for Individual and Representative*
                                          *Plaintiffs and the Putative Class*

25

BRYAN SCHWARTZ LAW
Bryan J. Schwartz (SBN 209903)
Rachel Terp (SBN 290666)
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301
Emails: bryan@bryanschwartzlaw.com;
rachel@bryanschwartzlaw.com

*Attorneys for Individual and Representative*
*Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUNHONG YIM, JAIME OLARTE, and JOSE ACUNA individually and on behalf of all others similarly situated, <br><br>      Plaintiffs, <br><br>           -against- <br><br> CAREY LIMOUSINE NY, INC. and CAREY INTERNATIONAL, INC. <br><br>           Defendants. | Case No.: 14-cv-05883-WFK-JO <br><br> **PROOF OF SERVICE** |

# PROOF OF SERVICE

*Yim v. Carey Limousine NY, Inc.*
Case No.: 14-cv-05883-WFK-JO

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK

I am over the age of 18 years and not a party to the captioned action; my business address is 1330 Broadway, Suite 1630, Oakland, CA 94612. On August 24, 2015 I served the documents described as:

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**DECLARATION OF ATTORNEY BRYAN SCHWARTZ IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, AND CERTIFICATION OF SETTLEMENT CLASSES**

on the interested  parties  to said  action  by the following means:

[X]  (By U.S. Mail) By placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, for collection and mailing on that date following ordinary business practices, in the United States Mail at the offices of Bryan Schwartz Law, Oakland, California, addressed as shown below. I am readily familiar with this business's practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and in the ordinary course of business correspondence would be deposited with the U.S. Postal Service the same day it was placed for collection and processing.

[X]  (By Electronic Mail) By transmitting a true copy thereof by electronic mail to the address shown below. The transmission was completed without error.

I declare under penalty of perjury that the foregoing is true and correct, and that I am a member of the Bar of California, and appearing pro hac vice in the Eastern District of New York for this case.

Executed on August 24, 2015 at Oakland, California.

Rachel Terp

NAME AND ADDRESS / EMAIL OF EACH PERSON SERVED

MORGAN, LEWIS & BOCKIUS LLP
Anne Marie Estevez
Sharon Lisitzky
200 South Biscayne Boulevard, Suite 5300
Miami, FL 33131
Telephone: (305) 415-3330
Facsimile: (305) 415-3001
Aestevez@morganlewis.com
slisitzky@morganlewis.com

Michael C. Lasky
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019
Telephone: (212) 468-4800
Facsimile: (212) 468-4888
mlasky@dglaw.com