UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SUNHONG YIM, individually and on behalf of      :
all others similarly situated, JOSE ACUNA, and   :
JAIME OLARTE,                                    :
                                                 :
                        Plaintiffs,              :        **MEMORANDUM & ORDER**
                                                 :        14-CV-5883 (WFK) (JO)
            v.                                   :
                                                 :
CAREY LIMOUSINE NY, INC., CAREY                  :
INTERNATIONAL, INC., and JOHN DOES               :
1-100,                                           :
                                                 :
                        Defendants.              :
------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

Before the Court is the December 9, 2015 Report and Recommendation of the Honorable James
Orenstein, Magistrate Judge, regarding Plaintiffs Jose Acuna and Jaime Olarte ("Plaintiffs Acuna
and Olarte") and Defendant Carey NY ("Defendant")'s motion for preliminary approval of the
proposed class action settlement. Magistrate Judge Orenstein recommended that the Court
certify the class for settlement purposes only, grant preliminary approval of the proposed
settlement, and authorize the parties to give notice without prejudice to Plaintiff Sunhong Yim
("Plaintiff Yim") to submit a proposal for consideration of a supplemental notice. For the
following reasons, the Court ADOPTS Magistrate Judge Orenstein's Report and
Recommendation in its entirety.

## BACKGROUND

The Court assumes familiarity with the underlying facts of this case, and provides only a

brief summary of the procedural history as it relates to this Memorandum and Order.

On August 24, 2015, Plaintiffs Acuna and Olarte filed a Notice of Motion and

Unopposed Motion for Preliminary Approval of Class Action Settlement, requesting the Court

to: (1) certify the class for settlement purposes only; (2) grant preliminary approval of the

proposed settlement; (3) authorize the mailing of notice to the settlement class; (4) name Bryan

Schwartz Law as class counsel and Plaintiffs Olarte and Acuna as class representatives; and (5)

schedule a final approval hearing date. ECF No. 42 ("Mot."). On September 25, 2015, Plaintiffs

Acuna and Olarte filed an Amended Motion for Hearing and Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. 57 ("Am. Mot."). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1), the Court referred the motion to Magistrate Judge Orenstein for a Report and Recommendation. ECF No. 47 ("Ref. Order").

On October 2, 2015, Magistrate Judge Orenstein held a hearing, in which he deferred making a recommendation and ordered the parties to address specific issues in a new submission. ECF No. 58 ("Hearing"). On November 2, 2015, Plaintiffs Acuna and Olarte filed a Supplemental Memorandum addressing the issues raised during the hearing. ECF No. 61 ("Suppl. Memo."). On November 19, 2015, Plaintiff Yim filed a Declaration in Opposition to the Motion for Preliminary Approval of the Proposed Class Settlement. ECF No. 67 ("Pl. Yim Decl.").

Magistrate Judge Orenstein held a second hearing on this motion on November 20, 2015. ECF No. 68 ("Min. Entry"); ECF No. 70 ("Tr."). On December 9, 2015, Magistrate Judge Orenstein issued a Report and Recommendation, recommending that the Court grant preliminary certification to the proposed class for settlement purposes only, grant preliminary approval of the proposed settlement, and authorize the parties to give notice of the proposed settlement to the settlement class without prejudice to Plaintiff Yim's counsel ability to send a supplemental notice that sets forth his views. ECF Entry Dated December 9, 2015 ("R&R"). Plaintiff Yim filed his Objections on December 23, 2015. ECF No. 73 ("Pl. Yim Obj."). Plaintiffs Acuna and Olarte and Defendant filed Responses to Plaintiff Yim's Objections on January 6, 2016. ECF No. 74 ("Pl. Acuna & Olarte Opp."); ECF No. 75 ("Def. Opp."). After reviewing the record, the Court ADOPTS Magistrate Judge Orenstein's recommendation in its entirety.

## DISCUSSION

In reviewing a Report and Recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). When a party makes timely objections to the Report and Recommendation, the Court must conduct a *de novo* review of those portions to which the objection is raised. *D'Annunzio v. Ayken, Inc.*, 11-CV-3303, 2015 WL 5308094, at *1 (E.D.N.Y. Sept. 10, 2015) (Kuntz, J.); Fed. R. Civ. P. 72(b)(3). When the parties raise no objections, make conclusory or general objections, or reiterate their original arguments, the Court reviews the Report and Recommendation for clear error. *Libbey v. Village of Atlantic Beach*, 982 F. Supp. 2d 185, 199 (E.D.N.Y. 2013) (Seybert, J.); *Zeitone v. Korsinsky & Klein, LLP*, 13-CV-0383, 2013 WL 5937397, at *1 (E.D.N.Y. Nov. 4, 2013) (Kuntz, J.).

Magistrate Judge Orenstein recommended that this Court: (1) grant preliminary certification to the class for settlement purposes only because the "requirements of numerosity and typicality and adequacy and predominance" under Federal Rule of Civil Procedure 23 "are all easily satisfied," Tr. at 49, (2) grant preliminary approval of the proposed class settlement because the settlement was "within the range of possible approval" "based on [an] initial evaluation of the fairness" standard, *id.*, and (3) "approve sending out the notice without prejudice to the submission of a proposal by [Plaintiff] Yim's counsel for consideration of a supplemental notice that sets forth his views," *id.*

### I.   Certification of the Class for Settlement Purposes

The Court may certify a class for settlement purposes only if the proposed class meets the requirements for class certification under Federal Rule of Civil Procedure 23. *See Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). A settlement class must satisfy both Federal

Rules of Civil Procedure 23(a) and 23(b) for the Court to certify the class.  Under Rule 23(a), a class action must meet the following requirements:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  If each of the Rule 23(a) factors are met, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Anchem*, 521 U.S. at 614.  Here, the parties propose certification of the class pursuant to Rule 23(b)(3), which permits a litigant to maintain a class action if the Court "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Magistrate Judge Orenstein recommended that the Court grant preliminary certification to the proposed settlement class because the "requirements of numerosity and typicality and adequacy and predominance are all easily satisfied." Tr. at 49; R&R.  Because no party has filed objections to Magistrate Judge Orenstein's recommendation to grant preliminary approval of the proposed class, the Court has reviewed Magistrate Judge Orenstein's reasoning and conclusions for clear error on the face of the record.  The Court finds no clear error and ADOPTS the recommendation to grant preliminary certification of the proposed class for settlement purposes only.

## II.     Preliminary Approval of the Settlement Agreement

### A.  Legal Standard

Courts favor the settlement of complex class action litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing *In re PaineWebber Ltd. P'ships Litig.*,

147 F.3d 132, 138 (2d Cir. 1998)).  In determining whether to approve a class action settlement, courts must "carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion." *In re Warner Chilcott Ltd. Sec. Litig.*, 06-Civ-11515, 2008 WL5110904, at *1 (S.D.N.Y. Nov. 20, 2008) (Pauley, J.) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

When examining a proposed settlement, courts evaluate the procedural and substantive fairness of the settlement. *See Warren v. Xerox Corp.*, 01-CV-2909, 2008 WL 4371367, at *3-4 (E.D.N.Y. Sept. 19, 2008) (Gleeson, J.).  With regard to procedural fairness, courts examine the "negotiations that led up to the settlement . . . 'in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves.'" *Id.* (quoting *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (Korman, J.)); *see also Wal-Mart Stores*, 396 F.3d at 116 (holding that courts may attach a "presumption of fairness, adequacy, and reasonableness . . . to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery" (quoting another source)).  With regard to substantive fairness, the Second Circuit has identified nine substantive factors to consider in determining whether to approve a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery); and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Warren*, 2008 WL 4371367, at *3 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

Although a complete analysis of these factors is required for final approval of a class

action settlement, at the preliminary approval stage, "'the Court need only find that the proposed

settlement fits 'within the range of possible approval' to proceed.'" *Warner*, 2008 WL 5110904,

at *2 (quoting *In re Prudential Secs. Inc. Ltd. P'Ships Litg.*, 163 F.R.D. 200, 2010 (S.D.N.Y.

2005) (Pollack, J.)). "In the context of a motion for preliminary approval of a class action

settlement, the standards are not so stringent as those applied when the parties seek final

approval." *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007) (Glasser, J.). "'Preliminary

approval of settlements should be given if the settlement is the result of serious, informed and

non-collusive negotiations and the proposed settlement has no obvious deficiencies[.]'" *Id.*

(quoting *In re Medical X-Ray Film Antitrust Litig.*, 93-CV-5904, 1997 WL 33320580, at *6

(E.D.N.Y. Dec. 26, 1997) (Sifton, J.)).

## B. Magistrate Judge Orenstein's Recommendation

Magistrate Judge Orenstein recommended preliminary approval of the class action

settlement "based on [an] initial evaluation of the fairness" because the settlement was "within

the range of possible approval." Tr. at 49. This Court agrees. The record demonstrates that the

proposed settlement resulted from the parties' extensive arms-length negotiations after

significant discovery proceedings. *See* Tr. at 11, 18-19 (discussing the negotiation process,

including lengthy discovery and one thousand emails exchanged among the parties negotiating

the details of the settlement); ECF No. 57-1 ("Schwartz Decl.") ¶ 3 (declaring that the settlement

negotiations included a twelve-hour mediation session with an top mediator, the exchange of

detailed mediation briefs with hundreds of pages of exhibits, and several months of discussions

among the parties). The record also shows that the terms of the settlement appear to fall within

the range of possible approval. The proposed settlement creates a common fund of $2.1 million,

which will compensate a class of 259 members for their claims, will provide enhanced payments to named Plaintiffs for the additional risk they undertook, and will cover attorneys' fees, costs, and administration fees.  Schwartz Decl. ¶¶ 4, 9.  The settlement appears to be distributed fairly to the various subclasses by taking into account their respective contract terms. *See id.* ¶ 7. Furthermore, Plaintiffs face the risk of liability and damages at trial because of unsettled legal and factual issues that could be determined against Plaintiffs.  Accordingly, the Court is persuaded that the settlement fits within the range of possible approval and concludes that preliminary approval of the settlement is warranted.

### C. Plaintiff Yim's Objections

Plaintiff Yim objects to Magistrate Judge Orenstein's recommendation on the grounds that the proposed settlement is not "fair and reasonable," and raises several arguments on substantive fairness grounds.

*First*, Plaintiff Yim objects on the grounds that the parties proposing the settlement have not put forth evidence regarding (i) the full value of their claims if they win at trial, or (ii) the basis for their calculation of the settlement amount.  Pl. Yim Obj. at 8-10.

The Court finds that the parties need not point to a specific number as their best possible recovery, particularly at this stage of preliminary approval, where the level of inquiry is more lenient than at final approval. *See Karvaly*, 245 F.R.D. at 86 (noting that the preliminary approval standards are "not so stringent" as those at final approval).  "[I]t is important to bear in mind that it will often be difficult if not impossible to calculate with any precision or accuracy what the best possible, or likely, recovery would be at trial," because "[n]umerous factors and contingencies may enter into that equation, preventing it from being reduced to a simple formula." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011)

(Larimer, J.) (citing *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010) (Weinstein, J.)). "[W]hile it is proper to assess the settlement amount by comparing it with the best possible recovery, that does not mean that the Court should rigidly measure the settlement amount against some purely theoretical, best-case-scenario sum, which plaintiffs may have had little realistic chance of actually recovering." *Id.* (internal quotation marks omitted).

Plaintiffs Acuna and Olarte and Defendant have cited to comparable cases as indicators of their potential recovery through litigation. *See* Tr. at 28-30 (citing *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) (Carter, J.), as an example of an approved FLSA settlement amounting to a fraction of the best possible recovery, and *Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526 (S.D.N.Y. 2014) (Furman, J.), as potentially affecting the recovery of class members here based on its holding that those class members were independent contractors, not employees). The Court finds that Plaintiffs Acuna and Olarte and Defendant have satisfactorily submitted evidence regarding their potential recovery at trial and the basis for their settlement amounts at this preliminary approval stage.

**Second**, Plaintiff Yim objects to the amount he will receive under the settlement and argues that the parties have not responded to the evidence he submitted regarding the full amount of what his recovery should be. Pl. Yim. Obj. at 10-11. Specifically, Plaintiff Yim claims that the settlement provides him only $5,000, which falls short of the $483,000 total losses he suffered. *Id.* Plaintiff Yim claims that he was not paid $163,000 in overtime wages and $205,000 in earned commissions, and that he was damaged by $70,000 in illegal deductions. *Id.*

Plaintiff Yim's disapproval of the amount he will receive under the settlement is not an impediment to preliminary approval, however, because the proper time for the Court to consider objections to a settlement is at the final approval hearing. *See In re Penthouse Executive Club*

*Compensation Litig.*, 10-Civ.-1145, 2013 WL 1828598, at \*2 (S.D.N.Y. Apr. 30, 2013) (Wood, J.) (granting preliminary settlement approval despite named plaintiffs' objections because "a plaintiff's dissatisfaction with certain settlement terms is not a bar to preliminary approval" and the "proper time for the Court to consider" those objections "is at the final approval hearing"); *Davis*, 775 F. Supp. 2d at 608 (granting preliminary settlement approval and noting that "there is no reason why" the objections of proposed interveners to the settlement "cannot be fully and adequately aired at the fairness hearing and in the context of the Court's decision whether to finally approve the  settlement").  Moreover, Plaintiff Yim has the right to opt out of the settlement and pursue his claim individually after the Court grants preliminary approval. *See Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 606 (W.D.N.Y. 2011) (Larimer, J.) (stating at the preliminary approval stage that "any class members who do not want to be bound by the settlement will be given an opportunity to opt out and pursue their own claims separately"); *see also* Tr. at 16, 21-23 (discussing the possibility that Plaintiff Yim will opt out of the settlement).

>      *Third*, Plaintiff Yim objects to the payment scheme in the proposed settlement, which provides different settlement amounts to the subclasses. Pl. Yim. Obj. at 11-12, 14-15. Specifically, Plaintiff Yim argues that the three subclasses are "not fair" because the subclasses are paid according to the duration of their driver agreements, rather than the number of weeks worked by the driver. *Id.* at 11.  Plaintiff Yim also argues that the settlement treats certain subclasses in a "preferential way" because it pays subclasses that signed a new agreement containing an arbitration clause more than the subclasses that signed the older agreement. *Id.* at 11-12.  In addition, Plaintiff Yim raises objections about the impact of the arbitration clauses in the class members' contracts. *Id.* at 14-15.

9

As a preliminary matter, a class need not provide the exact same settlement to every class member in order for a court to approve the settlement. *See In re MetLife*, 689 F. Supp. 2d at 351 ("'[U]nless the court reviewing settlement finds . . . 'stark conflicts of interest . . . ,' a settlement which contains class members who may recover different amounts is acceptable.'" (quoting *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 252 (D.N.J. 2000) (Walls, J.))); *In re Veeco Instruments Inc. Sec. Litig.*, 05-MDL-165, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007) (McMahon, J.) ("[T]here is no rule that settlements benefit all class members equally . . . ." (quoting *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983))). Indeed, courts in the Second Circuit have consistently approved class settlements in which the subclasses have recovered different amounts under the settlement. *See, e.g., Calibuso v. Bank of Am. Corp.*, 299 F.R.D. 359, 376 (E.D.N.Y. 2014) (Chen, J.) (granting approval to settlement class that included subclasses treated differently under the settlement); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 237-42 (E.D.N.Y. 2010) (Bianco, J.) (granting approval to settlement class in which different groups within the class received varying amounts of relief).

Here, the Court finds that the proposed settlement terms for the different subclasses are rationally based on legitimate considerations, and do not impede preliminary approval. The proposed settlement takes into account the impact of the length of the contract and the presence of an arbitration clause in the contracts of certain class members in its adjustment of the amount of recovery for the different subclasses—factors that would reasonably affect the recovery of class members. *See* Schwartz Decl. ¶ 7; ECF No. 73 Ex. A ("Settlement") ¶¶ 1.38-1.40, 2.3. The parties have negotiated a settlement in which the proposed settlement may incentivize class members to sign new agreements, but also provides additional benefits and rights to these class members. *See* Schwartz Decl. ¶ 8; Settlement ¶ 2.3. The Court finds, at this stage of the

proceedings, that these factors do not impede preliminary approval, and that these terms in the settlement agreement do not violate the fairness standard that applies at this stage.

*Fourth*, Plaintiff Yim objects to several terms within the proposed settlement. Pl. Yim Obj. at 12-15: Specifically, Plaintiff Yim objects to the "blanket, overly broad release" from liability in the proposed settlement, which runs through the date of preliminary approval instead of the end date on which the damages were calculated. *Id.* at 12-13. Plaintiff Yim also objects to the designation of material exhibits as confidential and the filing of those documents under seal, arguing that FLSA settlements must be filed publicly. *Id.* at 13-14. Plaintiff Yim further objects to the forty-five day period after the settlement to opt out or object, and requests a period of at least sixty days to respond. *Id.* at 15.

At this stage of preliminary approval, the Court will not substitute its judgment for the parties' judgment. *See Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 674-75 (S.D.N.Y. 2011) (Chin, J.) ("[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement 'into a trial or rehearsal of the trial.'" (quoting *Grinnell*, 495 F.2d at 462)). Rather, "the Court must make its own independent evaluation of the settlement" and "assess the settlement as it stands, without modifying its terms, . . . and without substituting its 'business judgment for that of counsel, absent evidence of fraud or overreaching.'" *In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (Lynch, J.) (quoting *In re Warner Commc'ns Secs. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986)). The Court finds that the terms of the settlement agreement are reasonable and were the result of good-faith negotiations that resulted in benefits for the class members. *See* Tr. at 18-19 (discussing negotiation process); Schwartz Decl. ¶ 3 (discussing settlement as result of good-faith and aggressively contested negotiations); *see also,*

*e.g.*, *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 46 (E.D.N.Y. 2010) (Vitaliano, J.) (approving settlement in which class members had thirty dates to opt out or object). The Court will not disrupt the settlement at this stage of preliminary approval.

**Finally**, Plaintiff Yim objects to the legal fees and incentive payments as being "unreasonably high given the minimal work performed." Pl. Yim Obj. at 16. The Court disagrees. The record demonstrates that Plaintiffs' counsel have spent hundreds of hours litigating this case, and that Plaintiffs Acuna and Olarte have each spent 100 to 150 hours assisting their counsel with the case. Schwartz Decl. ¶¶ 14-15. The Court finds that the legal fees under the settlement agreement are reasonable given this substantial effort.

### III.    Approval of the Notice

The proposed notice and distribution plan must meet the requirements of due process and the applicable procedural rule. *See* Fed. R. Civ. Proc. 23(c)(2)(B). Specifically, the proposed notice "must clearly and concisely state in plain, easily understood language" the following information: the nature of the action; the definition of the certified class; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if a member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members. *Id.* The proposed notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.*

Magistrate Judge Orenstein recommended that the Court "approve sending out the notice without prejudice to the submission of a proposal by [Plaintiff] Yim's counsel for consideration of a supplemental notice that sets forth his views." Tr. at 49-50; R&R; *see also* Tr. at 5-7 (discussing Plaintiff Yim's objections to the notice and his opportunity to file a proposed

supplemental notice).  No party has filed objections to Magistrate Judge Orenstein's recommendation regarding the notice.  Accordingly, the Court has reviewed Magistrate Judge Orenstein's reasoning and conclusions for clear error on the face of the record.  The Court finds no clear error and ADOPTS the recommendation to send out the notice without prejudice to Plaintiff Yim's counsel to submit a proposal to consider a supplemental notice setting forth his views.

* * *

For the foregoing reasons, Magistrate Judge Orenstein's Report and Recommendation is ADOPTED in accordance with this Memorandum and Order.  Plaintiff Acuna and Olarte's and Defendant Carey's Motion for Preliminary Approval of Class Action Settlement is GRANTED.

IT IS HEREBY ORDERED THAT: (1) the Court grants preliminary certification, for purposes of effectuating this settlement only, to the proposed settlement class; (2) the Court preliminarily approves the settlement; and (3) the Court authorizes the parties to give the settlement class notice of the proposed settlement without prejudice to the submission of a proposal by Plaintiff Yim's counsel for consideration of a supplemental notice that sets forth his views.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: March 31, 2016
      Brooklyn, New York